UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TERENCE L. MERRIEL,

    Petitioner,

v.                                                CASE NO. 6:11-cv-1100-Orl-37DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 7). Petitioner filed a reply to the response (Doc. No. 9) and an amended reply (Doc. No. 11).

Petitioner alleges seven claims for relief in his habeas petition: trial counsel was ineffective for failing to (1) move to suppress the DNA evidence; (2) call Timothy Caldwell to testify at trial; (3) call Sergeant Dennis Casey to testify at trial; (4) hire a DNA expert; (5) call William Mott to testify at trial; (6) file a timely notice of intent to rely to on an insanity defense; and (7) object to the trial court's improper consideration

of his lack of remorse at sentencing. For the following reasons, the petition for writ of habeas corpus is denied.

I.  **Procedural History**

Petitioner was charged by information with sexual battery by use or threat of deadly weapon, (count one), burglary of a dwelling with an assault or battery (count two), and lewd or lascivious exhibition (count three). After a jury trial, Petitioner was convicted as charged. The trial court sentenced Petitioner to two concurrent terms of life imprisonment for counts one and two, and to a concurrent fifteen-year term of imprisonment for count three. Petitioner appealed, and the appellate counsel filed an *Anders*[1] brief and moved to withdraw. The Fifth District Court of Appeal granted counsel's motion to withdraw and affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The trial court summarily denied the motion. Petitioner appealed, and the appellate court affirmed *per curiam*. Petitioner subsequently filed a second motion for post-conviction relief. The trial court dismissed the motion as successive. There is no indication that Petitioner appealed the denial of that motion.

II.  **Legal Standards**

   A.  *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

a claim adjudicated on the merits in state court unless the adjudication of the claim:

>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[1]*Anders v. California*, 386 U.S. 738 (1967).

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[2] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     *Standard for Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an

---

[2] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III. Analysis

    A. Claim One

Petitioner alleges trial counsel was ineffective for failing to move to suppress the DNA evidence in this case (Doc. No. 1 at 5). In support of this claim, Petitioner maintains that his DNA was illegally obtained after the police used coercion by striking him in the face and threatening to take him to jail. *Id.* at 5-6. Petitioner also contends that during his contact with Agent Reynolds, he was under the influence of alcohol and

cocaine and could not properly consent. *Id.* at 6. Petitioner asserts that the DNA sample taken from him was matched to the DNA samples taken from the victim's vagina. *Id.* Petitioner argues that without his involuntary DNA sample, he could not have been convicted of sexual battery because the DNA evidence was the sole evidence linking him to this crime. *Id.*

Petitioner raised this claim in his Rule 3.850 motion (App. L). The trial court denied the claim pursuant to *Strickland*, finding that even if Petitioner's DNA sample was taken in violation of his Fourth Amendment rights, the DNA match would have inevitably been discovered because Petitioner's DNA was in the CODIS (Combined DNA Indexing System) database due to a previous arrest (App. M). The trial court concluded that counsel's failure to file a motion to suppress did not amount to deficient performance. *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. Q).

To establish prejudice in the context of ineffective assistance of counsel for failure to raise a Fourth Amendment claim, a petitioner must show that "(1) the underlying Fourth Amendment issue has merit and (2) there is a 'reasonable probability that the verdict would have been different absent the excludable evidence.'" *Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

Assuming Petitioner's DNA sample was not voluntarily given to Agent

6

Reynolds[3], the Court concludes that the DNA sample would not have been suppressed pursuant to the inevitable discovery doctrine. *See Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004) (evidence is not excludable if there is a reasonable probability that the evidence would have been discovered by lawful means). In the instant case, Beata Vida ("Vida"), Florida Department of Law Enforcement ("FDLE") crime laboratory analyst, testified outside the presence of the jury during a proffer session that when she analyzed the vaginal and anal samples taken from the victim, she found the presence of foreign DNA (App. B at 391-93). Vida entered the foreign DNA into the CODIS database, which is a database that collects DNA in Florida, and a match was made to a 2003 sexual battery case in which Petitioner had been a suspect. *Id.* at 393-94. Because the foreign DNA matched a known DNA sample in the database, she informed police and requested Petitioner's DNA sample in order to conduct an analysis to confirm Petitioner's DNA did in fact match the DNA that was found in the victim's vagina. *Id.* at 394-95.

Although the police asked Petitioner to voluntarily submit a DNA sample, a DNA match was made prior to Petitioner's encounter with police.[4] "Identification by a

---

[3] The Court notes that Agent Reynolds testified that he did not threaten or coerce Petitioner, and Petitioner willingly gave a DNA sample to police (App. B at 281).

[4] Petitioner argues that he never was a suspect in a 2003 sexual battery case, and therefore, the DNA match could not have been made prior to a sample being taken from him by Agent Reynolds. Even if Petitioner was not a suspect in a 2003 sexual battery case, the Court notes that the records Petitioner attached to his amended reply indicate that he has a 2003 conviction for battery upon a school district employee, which

DNA match is analogous to identification by a fingerprint match." *Myles v. State*, 54 So. 3d 509, 512 (Fla. 3d DCA 2010). Florida courts have held that "[t]he comparison of latent prints and known prints already on file provides sufficient probable cause for a warrantless arrest thereby rendering admissible any evidence derived as a result of such arrest." *Id.* (quotation omitted). Analogous to *Myles*, here the DNA evidence obtained from the victim's vagina and anus matched a known DNA profile in the CODIS database, thereby establishing a DNA match in this case. That match was sufficient to make Petitioner a suspect in this case and to establish probable cause to obtain a warrant to compel him to give a DNA sample. *See Fitzpatrick v. State*, 900 So. 2d 485, 514 (Fla. 2005) (concluding that even if defendant's consent to the taking of his blood was involuntary, any error was harmless because the defendant was a suspect in the murder, and police had probable cause for a warrant requiring a blood sample). Thus, Petitioner's DNA would have inevitably been retrieved by lawful means because the police officers had probable cause sufficient for a warrant.

Petitioner has not demonstrated that the underlying Fourth Amendment issue is meritorious. Therefore, Petitioner cannot establish deficient performance on the part of counsel for failing to file a motion to suppress because it is unlikely that such a motion would have been successful. Likewise, Petitioner cannot show that there is

---

is a third degree felony. § 784.081, Fla. Stat. (2003). Pursuant to section 943.325(1), Florida Statutes, because Petitioner was convicted of battery, Petitioner was required to submit a DNA sample to Florida's CODIS database. Therefore, Petitioner's DNA is properly contained in the DNA database. Contrary to Petitioner's assertions, his DNA

reasonable probability that the verdict would have been different absent the excludable evidence due to the fact that a DNA match was made based on Petitioner's prior sample contained in the CODIS database. Petitioner has not demonstrated that the state court's denial of this claim was contrary to, or resulted in an unreasonable application of, clearly established federal law. Accordingly, claim one is denied.

### B.   *Claims Two, Three, and Five*

Petitioner claims that trial counsel was ineffective for failing to call Timothy Caldwell ("Caldwell"), Sergeant Dennis Casey ("Sergeant Casey"), and William Mott ("Mott") to testify at trial (Doc. No. 1 at 8-10). Petitioner alleges that Caldwell, the son of the victim, would have testified that he committed the sexual battery. *Id.* at 8. Additionally, Mott would have testified that he also had sexual intercourse with the victim on the night the crime was committed. *Id.* at 10. Finally, Petitioner asserts that Sergeant Casey would have testified, contrary to Agent Reynolds, that Petitioner was not found in the vicinity of the home on the date the crimes were committed. *Id.* at 9.

Petitioner raised these claims in his Rule 3.850 motion (App. L). The trial court summarily denied these claims pursuant to *Strickland*, concluding the witnesses' testimony would not have been helpful because there was no additional DNA evidence found connecting any other person to the crime. The court further reasoned that even if Petitioner had not been found near the victim's home, the witnesses' testimony would not have overcome the DNA evidence (App. M). The Fifth District Court of Appeal

---

could be matched via the CODIS database to the foreign DNA taken from the victim.

affirmed *per curiam* (App. Q).

Petitioner has not demonstrated that he is entitled to relief on this claim. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Sutton v. Sec'y, Dep't of Corr.*, No. 6:11-cv-308-Orl-28DAB, 2012 WL 3871867, at *4 (M.D. Fla. Sept. 6, 2012) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)). Petitioner's claim regarding Caldwell, Sergeant Casey, and Mott's potential testimony is speculative because he has not presented an affidavit from these witnesses indicating that they would testify in this manner. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Additionally, the Court concludes that Petitioner has not demonstrated that counsel's failure to call these witnesses to testify resulted in prejudice because their testimony would not have refuted the DNA evidence, which indicated the presence of Petitioner's DNA in the victim's vagina and anus. Petitioner does not allege that he and the victim engaged in consensual sexual intercourse, therefore, even if Mott and Caldwell had sexual intercourse with the victim, it is not likely that their testimony would have resulted in an acquittal at trial. Further, even if Sergeant Casey had testified that Petitioner was not found near the vicinity of the victim's home, this

testimony would not have overcome the DNA evidence in this case. Accordingly, claims two, three, and five are denied.

### C. *Claim Four*

Petitioner claims trial counsel was ineffective for failing to hire a DNA expert, who could have challenged the victim's allegations by showing that the victim had sexual intercourse with several individuals on the evening the sexual battery occurred (Doc. No. 1 at 9). Moreover, Petitioner argues that counsel failed to familiarize himself with DNA procedures, and therefore was unable to question the State's expert regarding whether other individuals' DNA was or could be found in the samples taken from the victim's vagina. *Id.*

Petitioner raised this claim in his Rule 3.850 motion (App. L). The trial court denied this claim pursuant to *Strickland*, stating that Petitioner failed to explain how the State's scientific procedures were flawed and why additional cross examination or another expert were needed in this case (App. M). The Fifth District Court of Appeal affirmed *per curiam* (App. Q).

Petitioner has not demonstrated that he is entitled to relief on this claim. Petitioner claims that the victim had sexual intercourse with multiple people during the same week and on the night the crimes were committed. However, even if the victim had consensual sexual intercourse with multiple partners and Vida or another expert testified that other foreign DNA was found, this testimony would not explain how Petitioner's DNA became located in the victim's vagina and anus region. Petitioner

does not allege that he had consensual sexual intercourse with the victim; therefore, he gives no explanation for the presence of his DNA. Petitioner has not shown that counsel's failure to further question Vida or obtain a defense expert resulted in prejudice. The state court's determination of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, claim four is denied.

### D. *Claim Six*

Petitioner asserts trial counsel was ineffective for failing to timely file a notice of intent to rely on an insanity defense at trial (Doc. No. 1 at 12). Petitioner states that his family informed counsel that he suffers from a mental illness, and counsel agreed that the defense of insanity was available to him; however, counsel failed to use this defense at trial. *Id.* Petitioner notes that he was examined by an expert prior to trial, who found no indication of mental illness. *Id.* at 13. Petitioner argues that had counsel filed a notice of intent to present an insanity defense, he would have been examined by two additional experts who would have uncovered his mental illness. *Id.*

Petitioner raised this claim in his Rule 3.850 motion (App. L). The trial court summarily denied the claim, first noting that trial counsel did not appear in this case until the week before trial was scheduled to begin, therefore, he could not have filed a timely notice of intent to rely on an insanity defense (App. M at 6). The trial court concluded that Petitioner had not shown that counsel acted in a deficient manner because after being evaluated by Dr. LaMacchia, the expert concluded that Petitioner

12

exhibited no signs or symptoms of mental disorder or dysfunction and was likely malingering in order to skew the results. *Id.* The appellate court affirmed *per curiam* (App. Q).

Criminal defendants must be afforded the opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). In order to present an insanity defense at trial in Florida, the defendant must give notice of his intent to rely on this defense in writing no later than 15 days after arraignment. Fla. R. Crim. P. 3.216(b) & (c). Although Petitioner states that he had thirty days prior to trial to file his notice of intent, the thirty-day time period only applies with respect to mental health defenses other than insanity. Fla. R. Crim. P. 3.216(e). Petitioner's claim is that he wished to present an insanity defense, not some other mental health defense, therefore, this section does not apply.

Petitioner was charged on March 24, 2008 (App. A). Defense counsel who represented Petitioner at trial did not appear in this case until December 16, 2008, well beyond the fifteen-day time frame for filing a notice of intent to rely on an insanity defense (App. M, Exhibit C). Thus, counsel will not be deemed deficient because he could not have filed a timely notice of intent in this case.

Additionally, even assuming counsel's actions were deficient, Petitioner has not demonstrated prejudice. Section 775.027(1), Florida Statutes, provides that "[i]t is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane." The statute further states that

to establish an insanity defense, a criminal defendant must prove that (1) he has a mental infirmity, disease, or defect and (2) because of this condition, the defendant did not know what he was doing or its consequences or did not understand that what he did was wrong. *Id.*[5] A criminal defendant has the burden of proving insanity by clear and convincing evidence. *Id.*

Although Petitioner testified that he suffers from a mental illness, the records in this case do not demonstrate that such is the case. Petitioner was evaluated for competency prior to trial. While a competency evaluation takes into consideration whether a criminal defendant can assist his attorney at trial, the mental health expert noted in his report that Petitioner did not display any symptoms of mental illness (Ex. M, Exhibit G). Moreover, the expert noted that Petitioner showed no signs bipolar disorder, which Petitioner alleged he had been diagnosed with in the past. *Id.* The expert concluded that Petitioner was malingering in an attempt to forego trial and delay his legal proceedings. *Id.* Thus, it is unlikely that even if Petitioner were tested by additional mental health experts, that any expert would have concluded Petitioner suffers from a mental infirmity, disease, or defect such that he did not understand what he was doing or the consequences of his actions. Accordingly, Petitioner has not shown that but for counsel's actions, the result of the trial would have been different.

Petitioner has not met his burden of establishing that the state court's

---

[5] This statute codifies the "*M'Naghten* Rule," which has long been the rule for proving insanity in Florida. *See Patton v. State*, 878 So. 2d 368, 374-75 (Fla. 2004).

determination was contrary to, or an objectively unreasonable application of, federal law. Accordingly, Petitioner's claim is denied.

### E. Claim Seven

Petitioner claims that trial counsel was ineffective for failing to object to the trial court's improper consideration of his lack of remorse at the sentencing hearing (Doc. No. 1 at 15). Petitioner argues that the trial court's consideration of his lack of remorse had a substantial influence on its decision to give him the statutory maximum sentence on each charge. *Id.*

Petitioner raised this claim in his Rule 3.850 motion (App. L). The trial court denied the claim, stating that while it may have expressed displeasure with the Petitioner for his self-serving letter, it based Petitioner's sentence on the nature of the crime itself and the victim and her daughter's testimony regarding the terror they experienced when the crime was committed and that they continue to experience (App. M at 8). The appellate court affirmed *per curiam* (App. Q).

At trial Petitioner read a letter he had written to the court in which he expressed his sorrow for his actions and stated he was disappointed in himself (App. C at 40). Petitioner noted that not only would he have to suffer for his actions, but his family and friends were also suffering due to his behavior. *Id.* at 41-42. The State read the victim's letter into the record, in which she stated that she and her daughter have been emotionally traumatized by the crimes. *Id.* at 45. The victim stated that they also have not been able to go back to their home because they no longer feel safe living

there. *Id.* at 45-46. The State also informed the trial court that in the presentence investigation report ("PSI"), Petitioner admitted to the probation officer that he had sexual intercourse with the victim but stated the intercourse was in exchange for cocaine. *Id.* at 49. Petitioner also stated when he did not give the victim the agreed-upon amount of cocaine she then "cried rape." *Id.* The State also noted that Petitioner admitted to police that the sexual intercourse was not consensual. *Id.*[6]

The trial court stated the following while pronouncing Petitioner's sentence:

> You know, these cases are problematic to a point. To say this case is horrific would be given probably a kind work, it's beyond horrific.
>
> When an individual, a total stranger literally breaks into another individual's home in the dead of the night while a child and their mother are asleep in the same bed, and then commences to rape the mom while that child is in that bed.
>
> To say I had the pleasure, because it's not pleasurable listening to that testimony, but no individual should have to go through that.
>
> And those are scars which individuals have for the rest of their life. I have seen dozens of these cases in my other life, as well as a Judge, and each one is a – brings a sense of what we are as human beings and what we can be or should be.
>
> What you don't appreciate Mr. Merriel is the fact that you have relatives come into this courtroom today and beg this Court for forgiveness on your behalf.
>
> On these kinds of cases I rarely have that, sir, so you are blessed to have a wonderful family back there that is standing behind you, you're blessed.
>
> . . .

---

6 The State agreed to forgo admitting Petitioner's statement to police at trial due to a possible *Miranda* violation.

> What was going through your head on that particular night sir I don't know, I don't know, but I have to a agree with [the State] . . . that little, if nothing, was said in your letter about the victims back there, that little girl, who was ten years of age at the time, ten years of age.
>
> No child should have to go through that. Whether it's certified mobster or certified monster [referring to Petitioner's tattoos] it certainly reflects some of your thinking, that tattoo on your arm.
>
> And I feel compelled to impose a sentence which is commensurate with the violent nature of the crime which had [sic] been committed.

*Id.* at 53-56.

Florida courts have held that a trial court's reliance upon a defendant's continued protestation of innocence, or lack of remorse, is an impermissible basis for imposing the maximum sentence. *Whitmore v. State*, 27 So. 3d 168, 169-72 (Fla. 4th DCA 2010); *Hannum v. State*, 13 So. 3d 132, 134-36 (Fla. 2d DCA 2009). Although the trial court noted that Petitioner's letter made no mention of the victims or what they have gone through since the crimes were committed, the trial court did not rely on Petitioner's lack of remorse in imposing his sentence. The trial court instead relied on the violent nature of the crimes and the effects that crimes have had on the victim and her daughter. Petitioner has not shown that trial counsel rendered deficient performance or that but for counsel's actions, the result of the proceeding would have been different.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. *Certificate of Appealability*

17

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Terence L. Merriel (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 4th day of April, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-3 4/4
Counsel of Record
Terence L. Merriel